IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CARRIE REGINA HICKS,

       Plaintiff,

                           CIVIL ACTION No.

v.                         1:12-cv-1663-JEC

CAROLYN W. COLVIN,
Acting Commissioner for
Social Security,

       Defendant.[1]

## ORDER & OPINION

    This case is before the Court on defendant Carolyn W. Colvin's objections [19] to the magistrate judge's Final Report and Recommendation ("R&R") [17]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the magistrate judge's R&R [17] should be **REJECTED** and the decision of the Commissioner should be **AFFIRMED**.

## BACKGROUND

    Plaintiff Carrie Regina Hicks is a fifty-three-year-old resident of Riverdale, Georgia. (Tr. [5] at 448.) A high school graduate who

---

    [1] Ms. Colvin became Acting Commissioner of the Social Security Administration ("SSA") on February 14, 2013. Pursuant to FED. R. CIV. P. 25(d), the Court substitutes her as the defendant in this matter in place of Michael J. Astrue, who was the Commissioner of the SSA when Hicks filed her complaint.

completed a six-month vocational training program, Hicks has worked as a cashier, stocker, front office cashier, and assistant customer service manager for various companies over the past fourteen years. (*Id.* at 213, 215, 451-53.)  In August of 2008, Hicks was fired from BrandsMart, her most recent place of employment, for "inflicting physical harm to another employee" after the two got into an altercation.  (*Id.* at 160, 242, 451, 454.)  Hicks has not worked since being fired and claims that she is now incapable of doing so, based on the onset of her alleged disability on August 28, 2008. (*Id.* at  448, 454.)  Hicks claims that she is disabled because she has a major depressive disorder, anxiety, acid reflux, and fibroid tumors.  (*Id.* at 94.)

On a normal day since her last employment, Hicks sleeps in late (or gets up early--the record is contradictory), ensures her thirteen-year-old daughter is dressed and ready for school, sits on her bed, says prayers, thinks about her life, and watches TV or sits on the balcony.  (Tr. [5] at 307, 455.)  Hicks generally directs her own daily routine, makes meals for herself, does occasional household chores, and manages her own finances.  (*Id.* at 307.)  While on some days she has no energy or motivation and does not take care of her hygiene or change her clothes, Hicks does "brush[] her teeth and shower[] or bathe[] regularly."  (*Id.*)

Although Hicks claims that she first began experiencing

2

depression in early adulthood, most pertinent to this case is her claimed recent bout of depression, for which she received outpatient treatment at the Clayton Center from April 24, 2009 until roughly November 15, 2010. (*See, e.g.*, *id.* at 204-06, 212-16.) At the Clayton Center, Hicks participated in group counseling every two to three weeks, talked to individual counselors from time-to-time, and occasionally saw Dr. Ramesh Amin--a board-certified psychiatrist and her treating physician for purposes of this action--"for medication." (*See, e.g.*, *id.* at 204-81, 456.) Hicks takes Trazodone and Zoloft for her depression, though not always as prescribed because of alleged side effects. (Tr. [5] at 156, 417.)

Hicks claims that her depression precludes her from working because it causes memory problems such as "forgetting how to do paperwork, going to appointments on the incorrect day, and forgetting what she is doing while performing tasks." She further claims that the "[m]edication that [she] need[s] . . . makes [her] drowsy . . . [and] dizzy" and causes a loss of appetite, resulting in low energy. (*Id.* at 308, 459.) For these reasons, Hicks applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on October 23, 2009. (Compl. [1] at ¶ 6.)

The SSA denied Hicks' claim initially and on reconsideration, after which she filed a timely appeal for a hearing. (Tr. [5] at 29-41.) The SSA granted Hicks' request, and an administrative law judge

3

("ALJ") held a hearing on August 3, 2011, though he too denied her claim for benefits after finding that she did not have a qualifying disability. (*Id.* at 11-23, 443-65.) Similarly, the Appeals Council declined her request for review of the ALJ's decision on March 19, 2011. (*Id.* at 6-8.) Plaintiff then appealed to this Court, where a magistrate judge reviewed her claim. (Compl. [1].)

The magistrate judge determined that the ALJ "erred in assigning greater weight to the non-examining, state agency consultants than to Appellant's treating psychiatrist." (R&R [17] at 27.) According to the magistrate judge, this error infected the ALJ's subsequent evaluation of Hicks' credibility, as well as the hypothetical question posed by the ALJ to the vocational expert ("VE"). Accordingly, the magistrate judge recommended that the ALJ's decision be reversed and remanded for the latter to reassess the record, the weight given to the agency doctors' opinions, the ALJ's credibility determination, and the hypothetical question posed to the VE. (*Id.* at 36-37, 43, 46.) The Commissioner filed her objections to the R&R and Hicks has responded. The R&R, and subsequent briefing, are now before the Court.

## **DISCUSSION**

### I.   **TIMELINESS**

Before addressing the substantive issues, this Court must first address Hicks' preliminary argument that the Commissioner's

4

objections are untimely.  (Resp. [20] at 1 n.1.)  Objections to an R&R must be made within fourteen days of service.  28 U.S.C. § 636(b)(1) (2009).  This timeframe, Hicks claims, required the Commissioner to file her objections to the magistrate judge's R&R by August 21, 2013; a deadline she missed by one day.  However, Rule 6(d) adds three days to the window within which a party must file a required reply when service is made pursuant to Rule 5(b)(2)(B)-(E). FED R. CIV. P. 6(d) (2014).  Service was of the R&R and accompanying order was so made, thereby allowing the Commissioner until August 26, 2013 to object.   LR 5.1(A) N.D. Ga. (2009); FED. R. CIV. P. 6(a)(2)(C), (d).  Consequently, the Commissioner's objections were timely. *See Thomas v. Thomas*, No. 1:06-CV-136(WLS), 2010 WL 883751, at *1 n.1 (M.D. Ga. Mar. 10, 2010)(Sands, J.).

## II.  <u>STANDARD OF REVIEW</u>

Under the Social Security Act, a district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2010).  Similarly, a district court may accept, reject, or modify, in whole or in part, the magistrate judge's recommended disposition, as stated in the R&R.  28 U.S.C. § 636(b)(1).

With respect to the Commissioner's determination, the Court's

review is not a full-scale reexamination.  The Court may not "decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(internal quotation and citation omitted)(quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Rather, the Court's role is limited to reviewing the record to determine whether "substantial evidence" supports the Commissioner's decision.  *Id.*  Substantial evidence is an intermediate standard requiring more than a scintilla of evidence, but less than a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  If substantial evidence supports the Commissioner's determination, it is conclusive and the Court must affirm it, even if the proof preponderates against it.  *Dyer*, 395 F.3d at 1210.

### III. **THE ALJ'S DISABILITY DETERMINATION**

An ALJ evaluates a claimant's application for benefits according to a five-step process, as described in SSA regulations.  20 C.F.R. § 404.1520(a) (2012).  The ALJ must determine:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant

AO 72A
(Rev.8/82)

> work despite the impairment; and (5) whether there are
> significant numbers of jobs in the national economy that
> the claimant can perform given the claimant's residual
> functional capacity, age, education, and work experience.

*See id.* An additional inquiry exists between steps three and four. At that point, the ALJ must analyze the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4). An RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). It takes into consideration the claimant's physical and mental limitations, symptoms, and pain and any statements from medical sources regarding the claimant's ability to work and her medical reports. 20 C.F.R. § 404.1545(a)(3) (2012).

### A.   <u>The ALJ's Determination at Steps One and Two</u>

The ALJ found at step one that Hicks has not engaged in substantial gainful activity since her alleged disability onset date. (Tr. [5] at 16); *see* 20 C.F.R. § 404.1572 (2012). At step two, he determined that Hicks' depression and anxiety are severe impairments, but that her acid reflux and fibroid tumors are non-severe because "there is no evidence to suggest that either of these impairments has had more than a minimal impact on her ability to perform work-related functions." (Tr. [5] at 16.) Substantial evidence supports this determination and neither Hicks nor the magistrate judge disputes it.

(*Id.* at 197-203, 247-55, 305.)   Consequently, the portion of the Commissioner's decision finding Hicks' acid reflux and fibroid tumors to be non-severe is **AFFIRMED**.   *Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)("An argument not made is waived."); *Hutchinson v. Astrue*, 408 Fed. App'x 324, 326 n.1 (11th Cir. 2011); *Outlaw v. Barnhart*, 197 Fed. App'x 825, 828 n.3 (11th Cir. 2006).

    B.    <u>The ALJ's Determination at Step Three</u>

    At step three, the ALJ found that Hicks' ailments do not meet or medically equal the level of severity required by SSA regulations, from which finding he then determined that Hicks has the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" so long as there are certain limitations on the complexity of the work's instructions, the amount of contact with the public, and the pace of the work.[2]   (Tr. [5] at 18-21.)   Central to

---

    [2]   The term "severe" has dual uses in the five-step analysis. At step two, it means a condition that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).   An impairment is significant when its effect on the claimant's ability to perform basic work activities is "more than slight or minimal."   *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).   At step three, "severity" refers to the degree of impairment.   If a disability is sufficiently severe at step three, the ALJ need not consider a claimant's RFC to find her disabled; if not, he must perform an RFC to make that determination. 20 C.F.R. § 404.1520(d).   Thus, it is not a contradiction for the ALJ to have found Hicks' depression and anxiety severe at step two, but not at step three.   That is, they limit her ability to work, but not so much so that she is considered disabled without regard to her RFC.

8

the ALJ's RFC determination was his decision to accord the opinion of Hicks' treating physician little weight and the opinions of Drs. Sherra, O'Neil, and Tezza considerable weight.  Hicks claims, and the magistrate judge concluded, that this determination was erroneous. This Court disagrees.

### 1.    The ALJ Did Not Err By Assigning Little Weight to Dr. Amin's Opinion

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440).  Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's medical records.  *Id.* at 1240-41. When the ALJ discounts a treating physician's opinion, he must articulate his reasons for doing so.  *Lewis*, 125 F.3d at 1440.

Dr. Amin was the treating physician.  Here the ALJ "carefully considered" Dr. Amin's July 20, 2011 opinion (the "Opinion") and gave it "little weight, because it is inconsistent with the claimant's functional status and Dr. Amin's own clinical findings." (Tr. [5] at 20-21, 411-19.)  He found this to be so because of Hicks' Global Assessment of Functioning ("GAF") score of 60 and because Dr. Amin did not "include any objective evidence to support his conclusions,

9

or offer any explanation as to why certain functions are 'markedly' limited." [3] (*Id.* at 20-21.)

The Court concludes that good cause existed under all three prongs of the *Phillips* test for the ALJ to discount Dr. Amin's Opinion. First, Dr. Amin's Opinion is not bolstered by the evidence. The Clayton Center's intake evaluation noted that Hicks had only mild or moderate impairments, and it projected the completion of her treatment to occur around July 24, 2009--a mere three months after she sought help. (*Id.* at 205, 209.) The intake evaluation also noted that Hicks had a current GAF score of 60 and a score of 65 for the past year: both of which indicate only moderate impairments. (*Id.* at 215A.) The treatment notes from the group and individual therapy sessions that Hicks attended roughly every two to three weeks are numerous and detailed, as opposed to those of Dr. Amin which possess neither characteristic. (*See, e.g.*, *id.* at 35-40.) And these treatment notes paint a far different picture than does Dr.

---

[3] A GAF assessment measures an individual's overall functioning with respect to her psychological, social, and occupational limitations. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV"). It is scored on a 100-point scale. *Id.* A score of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* at 34. Although the fifth edition of the DSM eliminated the GAF system, Hicks' doctors, the ALJ, and the state evaluators all worked under the DSM-IV rubric and used the GAF as a measure of Hicks' impairments. American Psychiatric Association, DSM 16-17 (5th ed. 2013).

Amin's conclusory Opinion, as the former show that Hicks' mood and affect were mostly unremarkable, that she participated in group discussions, and that she generally made progress while receiving treatment at the Clayton Center. (*See, e.g.*, Tr. [5] at 342-50.) Indeed, in all but two of his treatment notes, Dr. Amin, himself, encouraged Hicks to stay busy, be more active, and walk regularly. (*Id.* at 220, 265, 302, 395.)

Even more pertinent, the treatment notes state that employment is a realistic goal for Hicks, that she sought help from the Clayton Center in part for its employment resources, and that her vocational skills were one of her strengths: just the opposite of a conclusion that her condition precludes employment. (*Id.* at 206, 210-11, 213, 215A, 238, 386, 389.)  The strongest (and arguably only) piece of evidence in the record supporting the contrary assertions in Dr. Amin's Opinion is a sole GAF score of 50 that was recorded by a nurse at the Clayton Center.  This, however, is insufficient to overcome the remainder of the record or to sustain Dr. Amin's Opinion. (*Id.* at 266, 352); *see Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 Fed. App'x 898, 900 (11th Cir. 2014)(finding treating physician's opinion inconsistent with the record) and *Forrester v. Comm'r of Soc. Sec.*, 455 Fed. App'x 899, 902-03 (11th Cir. 2012).

Second, the evidence in the record does not support Dr. Amin's finding of marked impairments.  As noted above, the Clayton Center

11

treatment notes found that Hicks had a GAF score mostly around 60, generally responded to treatment, and had mild or moderate impairments. (*See, e.g.*, Tr. [5] at 204, 209, 276, 331A, 336.) Drs. McCurdy and McAdams, who performed consultative examinations of Hicks, found her to be depressed, but also found that she possessed a logical and coherent thought process, had satisfactory attention and concentration skills, was alert and attentive, and had an intact memory. (*Id.* at 308, 313.) Based upon their evaluations, the doctors determined that, while she had some limitations, Hicks could remember and follow simple instructions, adhere to a typical work schedule, and perform daily tasks, and also that she would not easily decompensate under normal work stress. (*Id.* at 309, 314.)

Further, Dr. McCurdy stated that none of the medical evidence she reviewed supported Hicks' claims and Dr. McAdams stated that Hicks' condition would improve with continued treatment. (*Id.* at 309, 314.) While the magistrate judge stated that these observations are "largely consistent" with those of Dr. Amin, in fact, Dr. Amin came to a significantly different conclusion in his Opinion when he stated that Hicks suffers from marked impairments that preclude employment. (R&R [17] at 33.) In light of the above, the record does not support his Opinion. *See Szilvasi*, 555 Fed. App'x at 900-01 (finding treating physician's opinion not supported by the record) and *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-61 (11th

12

Cir. 2004)(affirming ALJ's decision to discount physicians' opinions when the evidence did not support the level of impairment they suggested).

Third, Dr. Amin's Opinion was conclusory and contrary to his own treatment notes. Although Dr. Amin is Hicks' treating physician for purposes of this action, there is scant evidence in the record that he ever spent much time with her. Of the many treatment notes in the record from the Clayton Center, the Court could find only six from Dr. Amin. (Tr. [5] at 220, 240, 243, 265, 302, 295.) The few notes of his that are in the record are spare, with each consisting of only a few brief sentences and with none indicating the marked impairments that he later describes in his Opinion. (*See, e.g., id.* at 302.) Dr. Amin's sole treatment note of any detail describes Hicks feeling "hopeless and helpless," but he then goes on to rate her GAF score at 65: far from a marked impairment. (*Id.* at 243.)

Further, Dr. Amin's Opinion asserts clinical findings to support his diagnosis of marked impairments, but there is no indication of, or support, for these findings anywhere in the record, particularly his "clinical findings" of poor memory, personality change, mood disturbance, difficulty thinking or concentrating, and blunt, flat, or inappropriate affect. (*Id.* at 413.) If he observed these traits in Hicks, he did not memorialize them in his notes. The magistrate judge reasons that because Dr. Amin marked such clinical findings on

13

his Opinion, he must have necessarily observed them.  (R&R [17] at
33.)  This assumption is circular, however, and unsupported by the
record.  As such, it will not salvage Dr. Amin's Opinion when the
rest of the evidence militates against it.  *See Weaver v. Comm'r,
Soc. Sec. Admin.*, ___ Fed. App'x ___, 2014 WL 2219043, *3-4 (11th
Cir. May 30, 2014)(discussing treating physician's findings as
indicated on treatment form and also their contradiction with the
record) and *Hernandez v. Comm'r of Soc. Sec.*, 523 Fed. App'x 655,
657-58 (11th Cir. 2013) (inconsistencies between treatment notes,
medical evidence, and opinion provide good cause for discounting the
opinion).

Finally, despite his characterization in his Opinion of nine of
Hicks' twenty abilities as markedly limited, Dr. Amin writes that her
GAF score was 60 at the time and that it never dipped below that
point in the preceding year.  (Tr. [5] 412, 415-17.)  Besides
representing only a moderate impairment, this score is especially
damning to Hicks' claim because a GAF score measures both a patient's
symptom severity *and* level of functioning, and the score that is
assigned reflects the scope for the <u>most</u> <u>impaired</u> of the two
components. DSM-IV at 32-33. Accordingly, Hicks' *worst* impairment
only rated as moderate on the scale consistently used by her treating
physician and Clayton Center staff. *See id.* at 34.  This is in stark
contrast to Dr. Amin's Opinion, which found nearly half of Hicks'

14

abilities to be markedly limited. Such a drastic inconsistency constitutes substantial evidence to discount that opinion. *Phillips*, 357 F.3d at 1241 (conflict between treatment notes and opinion constituted substantial evidence to discount opinion); *Peters v. Astrue*, 232 Fed. App'x 866, 871 (11th Cir. 2007)("Given the inconsistencies between the notes and the disability evaluations of Peters' treating physicians, there was a legitimate reason for the ALJ to discredit their evaluations.").

Hicks and the magistrate judge question the ALJ's reliance upon Hicks' GAF scores, citing SSA comments and Eleventh Circuit dicta stating that the SSA has not endorsed the use of GAF scores in DIB and SSI programs and that they "[do] not have a direct correlation to the severity requirements in [the SSA's] mental disorders listings." (Br. [9] at 12; R&R [17] at 31-33); Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)("Revised Medical Criteria"). While this is true, the SSA *does* acknowledge that a GAF score can provide "'valuable additional functional information.'" *See* Revised Medical Criteria at 50764 and Federal Old-Age, Survivors and Disability Insurance and Supplemental Security Income; Listing of Impairments, Mental Disorders in Adults, 56 Fed. Reg. 33130, 33132 (July 18, 1991). Further, the Eleventh Circuit has held in a case almost directly on point that inconsistencies between a physician's GAF

15

score and RFC evaluation constitute substantial evidence supporting the decision to give that physician's opinion little weight. *Gilabert v. Comm'r of Soc. Sec.*, 396 Fed. App'x 652, 655 (11th Cir. 2010).[4]  Hicks' GAF scores, standing alone may not constitute substantial evidence, but as a marker of Dr. Amin's evaluation of her impairments and abilities over two years of treatment, Hicks' GAF scores are a reliable yardstick and constitute substantial evidence to discount Dr. Amin's Opinion for its inconsistency with the record.

While SSA regulations and Circuit precedent give the opinion of a claimant's treating physician an elevated status, they do not hold that such opinion trumps all other evidence.  The fact that a physician may have met with a patient six times over two years does not mean that his bald pronouncements can negate evidence, ignore treatment notes, or contradict the observations of other therapists. This is especially so when the treating physician's opinion is reflected in nothing more than a multiple-choice questionnaire from the internet that he filled out more than a year after his last visit with the patient and in which the most detailed sentence is the physician's address.  SSA regulations and Circuit precedent allow an ALJ to discount a treating physician's opinion when the record does

---

[4]  Albeit unpublished, an unpublished opinion can constitute persuasive authority.  11th Cir. 36-2 (2014); *United States v. Hernandez-Fraire*, 208 F.3d 945, 950 (11th Cir. 2000).

AO 72A
(Rev.8/82)

not support it.  The Court finds that the ALJ had substantial evidence for doing so here.  And, indeed, at one point, so did the magistrate judge.  (R&R [17] at 31 ("After reviewing the record, the undersigned concludes that the ALJ had good cause for not assigning controlling weight to Dr. Amin's opinion.").)  The ALJ did not err by according Dr. Amin's Opinion little weight.  *See Castle v. Colvin*, 557 Fed. App'x 849, 852-54 (11th Cir. 2014) and *Roth v. Astrue*, 249 Fed. App'x 167, 168 (11th Cir. 2007).

### 2.   The ALJ Did Not Err by Assigning Considerable Weight to the Opinions of the State Evaluators

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he then assigns weight to each medical source in the record according to the following factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole;" and (5) the doctor's specialization.

*Forsyth v. Comm'r of Soc. Sec.*, 503 Fed. App'x 892, 893 (11th Cir. 2013)(citing 20 C.F.R. § 404.1527(c)).  Although these factors guide the ALJ's determination, he "is not required to explicitly address each [one]."  *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. App'x 830, 833 (11th Cir. 2011).

Here the ALJ properly gave considerable weight to the state evaluators' opinions, writing that, "[a]lthough [the state agency

17

consultants] are not treating or examining sources, their opinions are most consistent with the record as a whole and are supported by comprehensive review of the claimant's medical records." (Tr. [5] at 20-21.) This Court has no quarrel with that conclusion. *See Forrester*, 455 Fed. App'x at 902-03. As described above, Hicks' treatment notes from the Clayton Center indicate moderate impairments and a gradual improvement in condition, Dr. Amin's notes rated her impairments as moderate, and Drs. McCurdy and McAdams stated that her condition did not preclude simple work. (*See, e.g.*, Tr. [5] at 243, 270, 276, 309, 314, 331A, 412.) After review of the record, Drs. Tezza and O'Neil concluded that Hicks' impairments were moderate and Dr. Sherrer found that Hicks' physical impairments were non-severe. Indeed, Dr. Tezza wrote that Hicks would likely "benefit from increased activity (such as employment) as it would provide constructive distraction from apparent ruminations." (*Id.* at 173.)

Simply put, substantial evidence supports the ALJ's decision to give considerable weight to these opinions because, once he assigned little weight to Dr. Amin's Opinion under the *Phillips* test and described the § 404.1527 factors upon which he relied, they are the most consistent with the record. The evidence strongly points to Hicks' impairments being only moderate. Dr. Amin's Opinion that they are marked in degree is unsupported. *See generally* SSR 96-2p, 1996 WL 374188 (July 2, 1996)(describing the process for assigning weight

18

to medical opinions); *see also Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. App'x 869, 873-74 (11th Cir. 2011)(affirming weight assigned to non-examining physicians' opinions because of their consistency with treatment records and GAF scores).

Hicks claims, and the magistrate judge concludes, that the opinions of non-examining sources can only be given little weight and that they do not constitute substantial evidence if they contradict the opinion of a treating physician. (Br. [9] at 13-14; R&R [17] at 34)(citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) and *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)). Again, this argument misconstrues Circuit precedent and SSA regulations.

In 1996, the SSA published Ruling 96-6p to "clarify [SSA] policy regarding the consideration of findings of fact by State agency medical and psychological consultants." SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Specifically, the SSA acknowledged "longstanding policies" that "[f]indings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence." *Id*. This policy is executed by SSA regulations that require ALJs to "consider findings and other opinions of State agency medical and psychological consultants" and to "explain in the decision the weight given to the[ir] opinions" according to the factors enumerated in 20 C.F.R. § 404.1527(a)-(d), unless a treating

19

source's opinion is given controlling weight. 20 C.F.R. § 404.1527(e).

Thus, it is true that contradictory opinions of state evaluators cannot, alone, serve as good cause to discount a treating physician's opinion, and thus they, by themselves, do not constitute substantial evidence upon which an ALJ may base his determination. But after independently discounting a treating physician's opinion, all of the medical sources in the record are put on an equal plane and the ALJ accords them weight pursuant to the factors enumerated in 20 C.F.R. § 404.1527. At this point, the opinions of non-examining sources may be accorded greater weight than those of examining sources. *See Lamb*, 847 F.2d at 703 ("The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician.").

The ALJ here followed precisely this procedure: he discounted Dr. Amin's Opinion because the evidence did not support it, and only then did he give considerable weight to the state evaluators' opinions because they *were* supported by the evidence. Thus, the ALJ did not erroneously apply the state evaluators' opinions to discount Dr. Amin's Opinion, but rather properly viewed each in light of the evidence of record. *See Kemp v. Astrue*, 308 Fed. App'x 423, 426-27 (11th Cir. 2009).

Hicks also argues that the state evaluators did not review the entire record. (Br. [9] at 12-15; R&R [17] at 35-36.) The magistrate judge also questioned whether the record included all of the medical evidence and the treatment notes of Dr. Amin. (R&R [17] at 35-36.) This Court does not share that scepticism. First, Dr. Tezza completed her evaluation in February of 2010 based upon Hicks' diagnosis, the 2009 records from the Clayton Center, and Dr. McCurdy's consultative evaluation. (Tr. [5] at 173.) Dr. O'Neil reviewed the Clayton Center treatment notes and the consultative evaluations of both Dr. McCurdy and Dr. McAdams. (*Id.* at 187.) Second, the magistrate judge's uncertainty as to whether the reviewing doctors knew about Dr. Amin is readily answered, as both Drs. McCurdy and McAdams state in their reports that Hicks sees a psychiatrist. (*Id.* at 309, 313.) From the Clayton Center's diagnosis alone, which Dr. Tezza states she reviewed, it is clear that Hicks saw Dr. Amin. (*Id.* at 173, 215A)("Recommendation for Treatment . . . Dr. Amin April 6, 2009 @ 3:00 p.m."). Third, any concern over Dr. O'Neil's request for an additional consultative evaluation arises from a misreading of the record, as that request occurred in Dr. O'Neil's August 2010 evaluation. In her January 2011 evaluation, she did not have the same concern as she received and reviewed the additional consultative evaluation that she requested. (*Compare id.* at 304 *with id.* at 187.) With additional evaluation in

21

hand, Dr. O'Neil, in comparison with Dr. Tezza, found that Hicks had *fewer* functional limitations.  (Tr. [5] at 189-96.)

Finally, the magistrate judge's reliance on Dr. Sherrer's remark that there were "[n]o additional MER/or (sic) opinion statements that need to be considered" (*id.* at 305) is not persuasive because (1) Dr. Sherrer is a reviewing medical doctor and Hicks had effectively abandoned her claims of disabling fibroid tumors and acid reflux by that point and (2) he gave his opinion in January of 2011, by which point all of the consultative examinations had been completed.

## IV.  **THE ALJ'S DETERMINATION OF HICKS' CREDIBILITY WAS NOT IN ERROR**

An ALJ must consider a claimant's subjective statements of pain if he finds "evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); 20 C.F.R. §§ 404.1529, 404.1545(a)(3).  The ALJ may reject the claimant's complaints if they are not credible, which is a decision the Court reviews under the substantial evidence standard.  *Marbury*, 957 F.2d at 839.

Here the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Hicks'] statements concerning the intensity,

22

persistence and limiting effects of these symptoms are not credible, because they are not supported by the medical evidence of record." (Tr. [5] at 20.)  The ALJ based this determination upon the success of Hicks' medications when taken as prescribed, her GAF scores, the findings of Drs. McCurdy and McAdams that Hicks could perform light work, and the lack of supporting objective medical evidence. (*Id.* at 16-21.)  In so doing, he complied with the requirements of 20 C.F.R. § 404.1529 and SSA Ruling 96-7p, and substantial evidence supports his decision.  SSR 96-7p, 1996 WL 374186 (July 2, 1996); *see Dyer*, 395 F.3d at 1211.

Hicks makes much of the ALJ's statement that he was unsure whether Hicks ever reported the side effects of her medications to Dr. Amin. (Tr. [5] at 39-41.)  But this misses the point of the ALJ taking note of this: that is, a failure by Hicks to tell Dr. Amin about the alleged side effects of her medications speaks to Hicks' credibility as to whether she actually suffered from such side effects, not whether they were a good reason for Hicks to stop taking her medications as prescribed.  Hicks, by her own admission, saw Dr. Amin "for medication." (*Id.* at 456.)  Whether she told him of issues regarding the medicines he prescribed makes the existence of the alleged side effects more or less likely.  Further, while Hicks told her nurse about the alleged side effects, she told other Clayton Center employees that she had no issues with her medications and that

23

she was taking them as prescribed.  Indeed, Dr. Amin's Opinion states that Hicks suffered from no side effects.  (*Id.* at 266, 312, 331, 352, 366, 369, 394, 417.)  Finally, when Hicks *did* complain to Dr. Amin about the side effects she suffered from Celexa, he changed her prescription to Zoloft.  (*Id.* at 265.)

The ALJ knew that Hicks <u>claimed</u> that she suffered side effects from her medications, but, per SSA policy, could not accept her allegations as true without supporting medical evidence, which was lacking.[5]  (*Id.* at 17); SSR 96-7p, at *1 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s).").

V.   <u>**THE ALJ'S HYPOTHETICAL QUESTIONS TO THE VE WERE NOT IN ERROR**</u>

Step five of the ALJ's inquiry requires him to determine that "significant number of jobs exist in the national economy that the claimant can perform." *Winschel*, 631 F.3d at 1180.  He may do so

---

[5]  The magistrate judge states that the ALJ erroneously failed to question Hicks about her alleged side effects at the hearing. (R&R [17] at 41.)  But Hicks discussed the subject on two occasions and the ALJ inquired as to who prescribed her medications.  (Tr. [5] at 456, 459-60.)  Short of the ALJ directly accusing Hicks of not telling the truth, it is unclear what further cross-examination the magistrate judge sought.

"either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert," though "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* Here the ALJ asked the VE to consider an individual with Hicks' age, education, and work history who could only understand and carry out simple instructions, who could only have limited contact with the public and coworkers, and who could not perform fast-paced work. (Tr. [5] at 461-63.) The VE responded that, given these limitations, Hicks could work as a laundry folder, sandwich maker, or labeler, of which sufficient positions exist in the national economy. (*Id.* at 463.)

The ALJ used the VE's testimony as substantial evidence for a determination that Hicks is not disabled because "she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 22.) Because the hypothetical posed to the VE included all of Hicks' credible symptoms as determined by the ALJ at steps three and four, it satisfied the Eleventh Circuit's requirements for use as substantial evidence. *See Winschel*, 631 F.3d at 1179-81 and *Wilson v. Barnhart*, 284 F.3d 1219, 1227-28 (11th Cir. 2002)(finding hypothetical question proper when it excluded impairments for which no support existed in the record). On this point, the magistrate judge agrees. (R&R [17]

25

at 46.)

Hicks claims that, by simply asking the VE to limit potential positions to jobs that have simple instructions and casual contact with the public, and that do not include fast-paced work, the ALJ's hypothetical question did not accurately reflect her limitations. (Br. [9] at 21-25.)  In making this argument Hicks cites *Winschel*. But *Winschel* directly supports the ALJ's question to the VE: there the court wrote that, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel,* 631 F.3d at 1180 (citations omitted).

Here, Drs. McCurdy and McAdams found that Hicks "should not have any difficulty remembering simple instructions;" "is able to understand, remember, and follow simple instructions;" "can likely adhere to a typical work schedule, although she may not be consistent in maintaining an adequate pace;" and "is not likely to decompensate under normal work stress." (Tr. [5] at 309, 314.)  Although this evidence showed that Hicks could engage in simple work despite some limitations in concentration, persistence, and pace, the ALJ did not limit his hypothetical to unskilled positions as *Winschel* allows, but rather explicitly included Hicks' credible limitations.  Therefore,

26

the hypothetical question posed to the VE does not constitute a basis for reversal.  *See Jacobs v. Comm'r of Soc. Sec.*, 520 Fed. App'x 948, 950-51 (11th Cir. 2013) and *Hutchinson*, 408 Fed. App'x at 328 (ALJ properly ignored hypothetical representing unsupported impairments).

## CONCLUSION

For the above reasons, the Court **REJECTS** the R&R and **AFFIRMS** the Commissioner's decision denying Hicks' claim for DIB and SSI.  The Clerk of Court is directed to **CLOSE** this case.

SO ORDERED, this 21st day of JULY, 2014.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)